We'll go to the second case, Khan v. United States. Okay, Mr. Swift? Good morning, Your Honors. Charles Swift and my partner on this, Christina Jump, on behalf of the appellate Hafiz Khan. May it please this honorable court. In Khan's case, criminal case, there was a train wreck that everybody saw coming. The trial court saw it coming. The prosecutor saw it coming. The only person who didn't see it coming was the defense attorney. We are here on his ineffective assistance to obtain the proper witnesses or to file the proper documents, letters of rogatory, get proper permissions, and potentially hold depositions on those witnesses. There's really little reason to believe that it would have been granted. Actually, there's plenty of reason to believe it would have been granted, Your Honor. Companion, his son, Hafiz Khan, and I know that because I did the depositions of several of those witnesses in Pakistan with the United States government, along with other witnesses. Three years later, in his son's immigration case, there was no difficulty in obtaining the witnesses. There was no difficulty in obtaining permissions. I thought, though, that that's something that happens three years later. I thought that when the defense lawyer goes over there to Pakistan, he's told by officials that they're unlikely to give permission. I am not sure that that was anywhere in the case. What he says to the court is that he doesn't need to get permissions, that he assures the court that he won't be able, at the onset on this, that he doesn't need to get the permissions and that he'll be able to present them in videotaped depositions without any problem whatsoever. It is highly unlikely, in fact, Your Honor, that a court would cognizant the idea that we would do something against Pakistan, against their wishes. That's why we go through the letter of derogatory. In fact, on the record, what the judge says is, in not granting the continuance, you told me this was going to be open and notorious. But don't, just in everyday life, don't all of us make strategic judgments sometimes? The old saying goes, it's better to ask forgiveness than permission. Isn't that what this is? It's better to ask forgiveness than permission. We called it, in the direct appeal case, a strategic decision. Why wasn't it a strategic decision? I've made the strategic decision many times to ask for forgiveness in retrospect rather than permission on the front end. Well, part is, A, it's not a strategic decision. At least the Supreme Court doesn't think so. If we were to look at Hinton v. Alabama, 57 U.S. 263, which involved the question of whether you followed the court's orders to obtain sufficient funds for an expert witness. He strategically decided not to. And then didn't have the funding. This isn't something where the district court is the one who shuts it down. This is where the Pakistani government does, right? That's correct. But that's because we haven't done it. I mean, not getting, I mean, the court's permission doesn't have anything to do with it. I'm talking about permission of the Pakistanis. Ask forgiveness of the Pakistanis rather than permission. Well, strategically, there is a way to obtain these witnesses, Your Honor. I've done it twice. I've, in criminal cases, I obtained witnesses in Afghanistan. I have obtained witnesses in Bosnia-Herzegovina. I have followed the letters rogatory because that's how the rules say to do it. I have had the cooperation of the United States government on every single time. And I have been able to obtain the witnesses in the middle of a war by following the rules. That's not strategic. That's simply error. What about the fact that the defense attorney in this case was consulting with lawyers in Pakistan who were saying, if you ask permission, it will be denied. So he doesn't ask permission and they proceed with the video and the video feed is interrupted. How is this not a catch-22 situation that the attorney was put into? I would say on the part is that you follow the process, Your Honor, or whatever consult, and that we come to the process that that's why we have the State Department to help us get witnesses and that we do get witnesses this way. We have a procedure. Doing a terrorism trial, and I've done multiple of them, is a difficult thing. One of the most difficult things about it is when it involves an overseas act, it has overseas witnesses. And in each case you have to follow the process to get them. In every case, I have followed the process. And some overseas cases involve Germany, and that's a whole different story. In this we have Pakistan, and why is it not relevant the year in which this is happening, what the country conditions are at that moment, rather than if you give me an example from three years later, why is that not potentially a very different situation? What I would say in this one, Your Honors, is that a few years later, we have still the Pakistani Taliban. We still have all of the concerns of security. Shortly before we did our witnesses, the Pakistani Taliban had conducted another attack. We had to move it around for every case by following the process. And again, inside Afghanistan, literally as paddles were being fought, and we brought witnesses down from Ghazni, Afghanistan to testify at videotape depositions. It's also one of the advantages of the deposition, Your Honor. We have multiple ways to get it. First, you request the permission if you want to do a videotape deposition. If it's impossible to secure the witnesses, then you can apply to the court for a written deposition of those witnesses where they may not be part. The procedures think through this. The problem is the attorney simply didn't do it. He went against everyone's advice. The trial court told him to do it. The prosecution told him to do it. And now what this court would do is say, you know what? You can ignore the orders of a court. The same thing, the same logic would be used for subpoenaing witnesses. To subpoena a witness is always a difficult decision for a defense attorney. Will they be mad? Will they get upset? You keep talking about it being ignoring the instructions of the court, but the court's not the impediment here. The court was allowing this testimony. It doesn't matter whether you say what the court was requiring. The court in the end did not require. The question is would he have gotten the permission from Pakistan or not, isn't it? Did he have time to do the letters of arrogance? All those kinds of questions to me seem like the real question. And what does the record say about his belief that it would have been difficult if not impossible to get their permission? It seems to me that the record at least about that is uncontroverted. His indications to the court on the part that an affidavit that he didn't need them is what I believe the affidavit said. There's a couple of things, though. He was told, look, if you seek the permission, you're not going to get it. You're likely not going to get it. But you don't need to. You don't need to ask for it. Because as long as the United States is not the one asking for it and they're not here, we don't care. If it's a voluntary deposition, fine, we don't care. So he makes the best of a bad situation. And even though the court has told him to get permission, the court nevertheless allows him to go for it and take the testimony the way he's picked to do. Then it gets shut down. That's what happens, right? That is what happens on the part. Now, Your Honor, and the court lets it go ahead. The court had no choice on the part here. I mean, not following what the court does isn't the point. That's what I'm saying. I'm saying, Your Honor, well, I think it is respectfully a significant point because he doesn't follow the rules on the process in this. And the courts have held repeatedly when you don't follow the rules on growing a subpoena or doing something to obtain the testimony of the witness, that that's not strategic. We're going against that line of precedence. The courts have said, no, no. See, I would have thought there might be some overlap between following the rules of the client, but that those two things are not perfectly coextensive, or I guess here what you'd be saying is mutually exclusive, but that the first and foremost, the Supreme Court has said in case after case after case after case is whether or not the defense counsel has reasonably represented the interests of his client. Following the rules of the court may bear on that, but they do not exhaust that. Your Honor, to the part, I would respectfully submit that he did not reasonably represent the interests of his client. So that's a different argument. He did not in the process in this. So that's fair, but I don't think that you can say, Your Honor, it's a complete answer to that question that he didn't follow the rules of the court. That's all I'm trying to say with respect to Judge Pryor's question is it's not a complete answer to say he didn't follow the rules of the court. That may bear on the reasonableness of his representation, but it does not define the reasonableness of his representation. So tell me why separate and apart from not following the rules of the court, this was an unreasonable decision. The deference that we owe counsel's decision-making. In the unreasonable decision-making, you take all steps to obtain the witnesses. Following the rules of the court would have been reasonable because A, let's say he doesn't allow the witnesses. Then I can go for the alternate, the written depositions. If I can't get them in person, I also will know well in advance of trial, I can look for hearsay exceptions. But in fairness, it's not enough to say there were other reasonable paths. You need to explain to me why this one was unreasonable. This plan is unreasonable because in obtaining a foreign witness, we have set out the methodology for doing it. And I stand before this court. There's evidence in this record that if he had done it that way, he would not have gotten the testimony. Isn't there? I mean, it looks to me like it's uncontroverted evidence. I would say whatever you have done personally in trying terrorism cases and whatever you've accomplished three years after the fact in Pakistan to me is totally beside the point. I've got to look at this record and whether the burden has been satisfied that his judgment that following what the court's instructions were would have worked. His uncontroverted record appears to be it wouldn't have been. So he made the best of a bad situation and said, I'm also told if we just do this voluntarily, they're not going to interfere. Let's try it that way. Isn't that a strategic, a reasonable strategic choice? That's what this comes down to, it seems to me. I don't think it's a reasonable strategic choice to disregard the procedures, Your Honor. I do not believe that it is reasonable under the parts to this and I don't believe that it's reasonable not to know what witnesses that you will have available before trial and to be prepared for trial. It started to work. I mean, he got through a witness, right? He did get through one witness. And under those circumstances, Your Honor, what I would say in this process is that we engage in a different speculation that he wouldn't have gotten it. I respectfully disagree that he would have gotten it. What evidence is there in the record that shows he would have gotten it? Within this trial, there is none. Okay. I would turn to that if we come to this, I believe that this is a tactical decision, not a strategic decision. I believe that it does not fall within the gamut of what the Supreme Court has left to strategic reasons. I think you hit more on the part on whether the witness would be available or not in process. That's really the thrust of the court's questions. But I would say that, like subpoenas, we don't speculate whether they would be there or not or whether this would have gone through or not. That's not appropriate. Otherwise, the failure to subpoena, we could always discern that they might not show up.  You've saved two minutes for rebuttal, Ms. Schultz. May it please the Court? My name is Ann Schultz. I'm an Assistant United States Attorney. I represent the United States of America in this matter. With me at council table is Assistant United States Attorney Sivashree Sundaram, who is one of the three prosecutors who handled Mr. Khan's criminal case. As the Court noted, the timing and the facts of what was occurring at the time is critical. This is a Strickland analysis, fact-intensive. Terrorism charges against Mr. Khan and his co-defendants were filed 10 days after United States Navy SEALs entered Pakistan without the knowledge or consent of the government of Pakistan and killed al-Qaeda founder and mass murderer Osama bin Laden in his Pakistani hideout. It was just about a year afterwards that the defense team, and I think it's important to remember it wasn't just Mr. Khurram Waheed, the counsel who is the only attorney named in the ineffective assistance of counsel claim. This was part of a joint defense by the, in total, four attorneys for Hafiz Khan and two attorneys for Izzer Khan. It was a battleground between the government saying absolutely there should be no Rule 15 subpoena, excuse me, depositions of fugitive co-defendants who refused to come to the United States and who wanted to testify in Pakistan, an unindicted co-conspirator and fact witness. It was five months again of bitter fighting and I could not disagree more strongly with my, with Mr. Swift that this was a train wreck. When you look at the concerted effort of the defense team that they convinced Judge Scola to allow depositions in Pakistan of three fugitive co-defendants is a remarkable testament to the skill and the tenacity of what occurred here and you have to look at that in the context. As far as the record also, and I'm going to confine myself to the record in this case. It is clear that Judge Scola, who is the person who entered the order, did not consider this was a willful violation that caused a sanction to be appropriate and I think timing again is very important. The order, the final order granting the Rule 15 depositions in this case was entered on November the 2nd, 2012. That's about two months before the trial was scheduled to begin and it's very important that in footnote five of that order, which I believe is docket entry 562, the court says, I don't think or it's arguably unnecessary that you have the express permission of the government of Pakistan to conduct this testimony, but I'm requiring it because from the standpoint of judicial resources and expense of the taxpayers, Judge Scola did not want them to fall through at the last minute. If you look in particular at the transcript of the status hearing that was held on December 26, 2012, shortly before trial began on January 2nd, specifically docket entry 620 from pages 77 to 101, you see the colloquy back and forth between Judge Scola and the defense counsel and it is there in particular that Attorney Waheed and Attorney Rosenbaum, who was representing Ishar Khan in the joint defense theory there, talk about the fact of all the efforts that had been taken by the defense team and in particular Karim Waheed and the attorney in Pakistan hired in order to assist in trying to do everything the defense could to get that testimony in front of the jury. And his affidavit I believe is at 598-1. As the court noted, they went and they talked to the deputy solicitor of the, I believe, the Ministry of Law and also they spoke with the legal counsel of the Ministry of Foreign Affairs and they were told this has never happened. Nobody really knew and that seems to keep getting lost as Mr. Swift is talking about the, as the 11th Circuit put it in direct appeal, the international quagmire that these defense attorneys were facing. Never had the government of Pakistan approved testimony in a United States criminal case, let alone a terrorism case involving the Pakistani Taliban to occur. We have the testimony of an agent on that, Banker? Yes, Your Honor. That was in one of the pretrial hearings. I want to say it's docket entry so I'm going to cut you off on that. The FBI agent talked about... I think it's 550. 550 is the second, thank you, Your Honor. That's the hearing where they did the testimony that occurred. And yes, he talked about the fact that it was unprecedented. The United States at one point actually tried to get the district court to order the attorneys to have the testimony in a third party country like the United Arab Emirates. But of course, the defense, they were stuck. Attorney Waheed knew that there was no way this could occur anywhere but Pakistan because the moment the fugitive co-defendants left Pakistan they were going to be arrested. Indeed, at that hearing at docket entry 550, the FBI agent spoke about the fact that the depositions couldn't occur at the embassy in Pakistan for security reasons and if they showed up, we would arrest. So let me just push back just a little bit. I was giving Mr. Swift the business about his reliance on sort of violation of orders of the court as sort of total evidence of unreasonable conduct. How far though do you want to take us down the road of valid, for it being a valid strategic judgment to ignore what the district court has said? First of all, Your Honor, I wouldn't say that it was a flat out ignoring. If you look at the status conference on December the 10th when Judge Scola asked Mr. Waheed, so what's the story? Do you think we're going to get any firm ruling from the government of Pakistan? Waheed said, you know, in the last week I think we've made progress. I'm hopeful that we'll get something. I guess I'm reading from 562. In light of the confusion, the court says it wants assurances that the Pakistani government either A, permits, explicitly permits the depositions to be held or B, acknowledges that it is aware of the depositions and that no official permission is needed. Your Honor. And then Waheed sort of says, well, I'm going to do a third option. Sort of thanks for the advice, but I'm going to do a third option. And, you know, I mean, I get it. I think that in the real world we do all make judgments that it's easier to ask forgiveness than permission. But that is, in fairness, sort of a rogue strategy. It's a risk. Your Honor, I'd like to say a couple of things about that. First of all, obviously the United States at all times has argued that the preferred thing here would have been, indeed, letters rogatory. But Judge Scola never said they were required. And we would never recommend that a defense attorney or any attorney would ignore a court order. Far from it. But I think it's impossible to read the record in this case. And frankly, no one better than the time in the criminal case. But also, he is the judge who considered this 2255 and the ineffective assistance of counsel claim. Now, in fairness, Judge Scola didn't have the opportunity to consider the argument made for the first time on direct appeal that this would be a violation of a court order. And therefore, as an officer of the court, that the 2255 should be granted. As the government argued in word brief, that, in our view, is not a proper argument in front of this court. But I don't think, when you talk about noncompliance with the court order, first of all, if there were a per se rule that every time a defense attorney failed to fully comply with the court order, that was ineffective assistance of counsel, in the majority of cases, we would write the first prong of Strickland right out. And we'd always be going to prejudice. And I don't know how you read Strickland and the wall of cases post-Strickland talking about you have to look at the facts. And, you know, I looked and looked, and this is just unique in so many levels, not only because it was unprecedented to try to bring that testimony from Pakistan, and this is completely different than a civil immigration case years later where, from the Pakistani government standpoint, what you would have if the United States. And once again, I would also note that that's another argument that the district court did not have the opportunity to consider because never in the district court was that mentioned. And even on appeal, it's referenced, it's an immigration. What I care about is what evidence there is in the record, okay? Correct. And as far as... And we have the FBI agent's pretrial testimony. This has never been done. Correct. We have Waheed's, we have, what do we have from Waheed who says, he was told by Pakistani government officials that this was going to be difficult, if not impossible. Well, Your Honor... But if you don't want our permission, as long as it's a voluntary deposition, we don't care. Correct. On the testimony again, if you look at 62077-101, that is where you have the exchange going back and forth, which supplemented the affidavit that was filed by Khan. You also have some conversations with Waheed talking with Judge Scola in the February 13th and February 15th status conferences, which are at 872 is the February 15th, and 849 is the February 13th. So those are the times where you have him talking about all the efforts that he made and what he was told. Part of the things I think Your Honor is talking about that had never been approved, the government at different times spoke about the State Department also opining, although not officially, what would happen. A lot of what was told to Waheed was basically, they weren't sure what would happen, but that if you had to have an official statement from the government of Pakistan, that then it was going to make them a party, is how they phrased it. And in that situation, I think another important thing to really note that may have gotten lost is... That situation, it wasn't going to be granted? I don't recall either of the Ministry of Foreign Affairs or the Ministry of Law flat out saying it wouldn't be granted. What did Waheed say? Waheed said, I think actually another part of the strategy was that the obligation was that of the United States, that the defense attorneys had no requirement that the government of Pakistan didn't care, that you could do voluntary depositions. Did Waheed say, though, that he was told if it required the official permission of the government, he was unlikely to get it? I don't recall that specific statement, Your Honor. If you would allow me, I will go back and double check and inform the court. I can read the record, too. I apologize. You're here to help me today. No, I apologize. I don't remember that precise statement. I think what came through loud and clear was in their view that if they brought the government of Pakistan into it and made them a formal party, that there was certainly no assurance at all that they would get the permission because, again, it had never been done. And the other thing I think that's very important is on December 28th, the United States State Department sent a diplomatic note and also a member of the State Department called the court and told them, this is happening, you're going to have the depositions. There was never any response from the government of Pakistan, or no official response, although, again, as Judge Skola noted in his order denying the motion for new trial, there was no evidence conclusive as to what happened and why the feed was cut, but everything seemed to indicate that some part of the government of Pakistan shut it down. Because the government of Pakistan never responded to the diplomatic note sent on December 28th, there is nothing in this record, nothing in this record to indicate that they ever would have approved the testimony from Pakistan of the co-defendants, the unindicted co-conspirator and the fact witness. Let me ask one question about letters rogatory in general, and forgive me, it's been a while since I've dealt with them, but in looking at letters rogatory in general, and whatever foreign country it may be, are they always required or are there circumstances where if the foreign country says, oh, if it's a voluntary deposition, that's okay, go ahead, or is it always appropriate to get the letters rogatory? I think two different questions, Your Honor. First of all, the government's position would be when you're dealing with another country, it's always appropriate to get the letters rogatory, but as a practical matter, they can take a year or more. And here I think when you're talking about the reasonableness of the decisions made by Waheed and the defense team, it's incredibly important to remember that Judge Scola himself in his November 2nd order said, didn't require letters rogatory, and didn't even find that the official permission was required, and I see that my time is up. Unless there are any questions, the government would ask that the court affirm for the reasons stated in the brief Senate oral argument. Mr. Swift, you have two minutes. In response on the part is, really what you have inside this is the failure to follow. The request for letter rogatory, especially if it's never done, is the reasonable thing to do in representing your client. Trying to go the back door is not the reasonable way. If it's never been done before, doing it formally is correct. The government is correct that letters rogatory take a long time, but that's why you have continuances. The court's not going to grant a continuance when you haven't put in the requests at the beginning. The government can't participate without giving notice to the State Department. The government of Pakistan's going to find out no matter what in this process, and that's exactly what happened to it. They just didn't fill in doubt through formal channels requesting the depositions through letter rogatory, which are made on the defendant's behalf by the United States, which changes parts. Simply put, your honors, there's no way to go that we would not have the witnesses. Simply put, if you had followed it, there would be a clean record on the part on it. Simply put, they were material witnesses, they were important, and all of these unique circumstances don't argue for winging it. It's a unique set of circumstances. I'll agree completely on that. But it doesn't argue for winging it. And if anything, it argues for doing it formally and doing it correctly. But if there is no evidence that the Pakistani government would have granted permission, how do you win? What's that? How do you win this appeal? What's that? How do I win? If there's no evidence. If there's no evidence that the Pakistani government would have agreed to the depositions, how do you win this appeal? I win this appeal because it would be speculative to say that they would not have. In this process, in the decision making on obtaining a witness, your honor. Isn't the burden on you? I think I've showed the two thoughts that are important. The witnesses, all in their affidavits, would have given material testimony and would have been willing to testify. That's the most part. Isn't the most important piece what the Pakistani government would have said? I agree that it is important, your honor. But I would say in the end, we would come to the same idea that if I issued a subpoena, do I have to show that I failed to issue a subpoena? Isn't it fatal that we don't know that the Pakistani government would have granted the permission to take the depositions? I do not believe it is, your honor. I do not. Because I believe then the court engages in speculation the other way. And these sorts of speculations on Strickland error would then be... If the burden's on you to prove the Pakistani government would have granted it, isn't it fatal if you don't have that evidence in the record? I don't believe that the burden is on me to prove that they would have granted it. You have to prove prejudice. I disagree with that. You disagree with the notion that under Strickland, you have to prove prejudice? I have to prove prejudice in his failure to follow the steps. You say that the failure to follow the steps means there was deficient performance. Okay. Now, where's the prejudice? If he had done what you say he should have done, and there's no evidence that it would have been granted anyway, you failed to prove prejudice. In part on that, in similar cases where they failed to subpoena or failed to obtain the witness on the part, they did not require to prove that the witness would have shown up if subpoenaed. I would use them as analogies.  Thank you, Your Honor. Thank you, Mr. Swift. We have your case, and we'll move to the third one.